**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Ayman Mohamed Saad Ahmed Abouelghit, | No. CV-26-00804-PHX-SHD (JZB) |
| Petitioner, | |
| v. | **ORDER** |
| Pamela Bondi, et al., | |
| Respondents. | |

On February 6, 2026, Petitioner, through counsel, filed a habeas corpus petition under 28 U.S.C. § 2241 seeking release from immigration detention. (Doc. 1). By Order dated February 11, 2026, the Court ordered Respondents to show cause for why the Petition should not be granted. (Doc. 4). The Petition is now fully briefed. (Docs. 7, 11). For the reasons that follow, the Court will grant the Petition and order that Petitioner be immediately released from custody.[1]

I.    **Background**

Petitioner is a native of Egypt who entered the United States on October 31, 2024, and was taken into custody that same date. (Doc. 7-1 ¶ 5). Petitioner expressed fear of returning to Egypt, and was given a credible fear interview. (*Id.* ¶ 7). On December 4, 2024, it was determined that Petitioner had a credible fear of returning to Egypt, and his case was referred to an immigration judge (IJ). (*Id.* ¶¶ 8-9). On May 19, 2025, the IJ

---

[1] Petitioner has also filed a Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 12), and a Motion to Amend the Petition to add claims for declaratory and injunctive relief (Doc. 13). Because the Court will grant the Petition as filed, it will deny the motions as moot.

1    ordered that he be removed to Egypt, but granted withholding of removal to Egypt.  (*Id.* ¶

2    10).   That same day, ICE inquired with Kenya, El Salvador, South Sudan, Kosovo,

3    Rwanda, and Mexico as to whether they would accept Petitioner.  (*Id.*).  Kenya has denied

4    the request; no response has been received from any of the other countries.  (*Id.* ¶ 11).  On

5    October 22, 2025, local ICE "requested assistance from Headquarters for removal"; it does

6    not appear that any response has been received from that request either.  (*Id.* ¶ 12).

7           As of the date of this Order, Petitioner remains detained by ICE.

8    **II.     Legal Standard**

9           Petitioner's continued detention is governed by 8 U.S.C. § 1231 and *Zadvydas v.*

10   *Davis*, 533 U.S. 678 (2001).  Under § 1231(a)(1), the Government has 90 days in which to

11   remove an alien once a removal order becomes final.  Detention during this removal period

12   is mandatory.  8 U.S.C. § 1231(a)(2).  If the Government is unable to effect removal within

13   the 90-day removal period, however, continued detention of aliens such as Petitioner

14   becomes discretionary.  8 U.S.C. § 1231(a)(6).  That discretion, however, is not unfettered,

15   and indefinite detention is not permitted.  *Zadvydas*, 533 U.S. at 689 (8 U.S.C. § 1231(a)(6)

16   "does not permit indefinite detention.").   This is not to say that every alien like Petitioner

17   must be released once the 90-day removal period has expired.  533 U.S. at 701.  Rather,

18   the Supreme Court in *Zadvydas* recognized an implicit post-§ 1231(a)(2) period in which

19   continued detention is "presumptively reasonable" and does not violate the Fifth

20   Amendment.  *Id.*   The *Zadvydas* Court concluded that this "presumptively reasonable"

21   period extends for no more than 6-months once an order of removal becomes final

22   (including the 90-day mandatory detention period under § 1231(a)(2)).  *Id.*   Thereafter,

23   "once the alien provides good reason to believe that there is no significant likelihood of

24   removal in the reasonably foreseeable future, the Government must respond with evidence

25   sufficient to rebut that showing."  *Id.*   If, after considering the evidence, the Court finds

26   that "removal is not reasonably foreseeable, the court should hold continued detention

27   unreasonable and no longer authorized by statute."  *Id.* at 699.

28   **III.    Discussion**

1      Here, Petitioner's removal order became final 30 days after the IJ's May 19, 2025

2  order when neither party appealed (approximately June 19, 2025).  8 C.F.R. § 1241.1.  As

3  such, the § 1231(a) period began to run on that date, and expired 90 days later on

4  approximately September 19, 2025.  At that point, the post-§ 1231(a) *Zadvydas* period

5  began to run, and expired no more than 90 days later on approximately December 19, 2025.

6  Accordingly, as of the date of this Order, Petitioner has been detained beyond the

7  "presumptively reasonable" period articulated in *Zadvydas*.  As such, to obtain relief

8  Petitioner must first provide "good reason to believe that there is no significant likelihood

9  of removal in the reasonably foreseeable future," and, if he does so, Respondents "must

10 respond with evidence sufficient to rebut that showing."  *Id.*

11     Petitioner's removal order granted withholding of removal to Egypt.  As such, there

12 is good reason to believe that removal to Egypt is not significantly likely to occur in the

13 reasonably foreseeable future.  The burden thus shifts to Respondents to rebut that showing

14 with sufficient evidence.  533 U.S. at 701.

15     Respondents argue that "ICE has identified specific countries for removal and has

16 made repeated attempts to obtain third country removal authorization and headquarters

17 continues to work on possible removal options."  (Doc. 7 at 3).  This is not supported by

18 the evidence provided.  From the record provided, ICE inquired with Kenya, El Salvador,

19 South Sudan, Kosovo, Rwanda, and Mexico on May 19, 2025, as to whether they would

20 accept Petitioner.  Kenya has denied the request, and no response has been received from

21 any of the other countries.  (*Id.* ¶ 11).  Further, on October 22, 2025, local ICE "requested

22 assistance from Headquarters for removal," but it does not appear that any response has

23 been received from that request either.  As such, on this record, there is no evidence to

24 support that ICE has even identified a third country willing to accept Petitioner, much less

25 that removal to that country is significantly likely to occur in the reasonably foreseeable

26 future.

27     The Supreme Court held in Zadvydas that as the period of detention grows, "what

28 counts as the 'reasonably foreseeable future' would have to shrink."  533 U.S. at 701.  As

noted, Petitioner has now been detained beyond the presumptively reasonable period identified in Zadvydas, and having provided "good reason" to support that his removal to Egypt is not significantly likely to occur in the reasonably foreseeable future (because she has been granted withholding of removal to Egypt), the burden shifts to Respondents to rebut that showing with sufficient evidence.  Id.  Respondents have failed to do so. Respondents have not even identified a third country that might accept Petitioner, let alone provided evidence that removal to a third country is significantly likely to occur in the reasonably foreseeable future.  Accordingly, the Court finds that Petitioner's continued detention is in violation of the Fifth Amendment, and will thus grant the Petition.

**IT IS THEREFORE ORDERED** that:

(1)    The Petition for Habeas Corpus (Doc. 1) is **granted**.

(2)    Respondents must **IMMEDIATELY RELEASE** Petitioner from custody.

(3)    Within **48 HOURS** of this Order, Respondents must file a Notice of Compliance.

(4)    Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 12), and Motion to Amend the Petition to add claims for declaratory and injunctive relief (Doc. 13) are **denied as moot**.

(5)    The Clerk of Court must enter judgment accordingly, and close this case.

Dated this 2nd day of March, 2026.

Honorable Sharad H. Desai
United States District Judge